# Gailey *v.* State Workmen's Insurance Fund, Appellant, et al.

*Workmen's compensation—Employment—Workman or independent contractor—Evidence—Act of June 2, 1915, P. L. 736—Appeals—Review.*

1. One performing services for another, as independent contractor, is not an "employee" within the meaning of section 104 of the Act of June 2, 1915, P. L. 736.

2. If, in rendering services for compensation, one is obliged to follow the will of his employer only as to the result of the work in hand, and not as to the means by which it is to be accomplished, he is generally accounted an independent contractor.

3. Neither the compensation authorities nor the courts should be solicitous to put claimants in the position of independent contractors, when a reasonable view of. the evidence warrants a finding that the injured person was an employee.

4. Where an insurance carrier is resisting a claim on the ground that the claimant's deceased husband was an independent contractor in taking out coal, testimony of the employers that they considered the deceased as an employee, and that they took out compensation insurance in which they included him with other employees, is evidence to be considered in determining the character of decedent's services.

5. In such case, the fact that the deceased was paid, instead of fixed wages, a certain price on each ton of coal taken from a mi·· and that, out of this price, he paid other workmen, did not nec sarily deprive him of his status as an employee.

6. In determining the claim, it must also be considered that the employers, in fixing the compensation of deceased for mining coal, allowed him more than they ordinarily would have paid, so as to compensate him for attending a pump, and that he was injured while doing the latter.

7. Where the compensation authorities have found the facts in favor of claimant, the court in reading the evidence must resolve every intendment that way.

8. In workmen's compensation cases, it is for the compensation authorities to weigh the evidence, draw inferences therefrom, and find the facts. The sole concern of the appellate court in reviewing an award, is to see that competent proofs are present which support the material points of the claimant's case.

*Appeals—Evidence—Leading questions.*

9. Testimony elicited by leading questions affects only its probative value in fact, as to which an appellate court has no power of review.

Argued April 19, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 149, Jan. T., 1926, by State Workmen's Insurance Fund, from judgment of C. P. Blair Co., Oct. T., 1925, No. 41, affirming decision of Workmen's Compensation Board awarding claim, in case of Helen M. Gailey v. State Workmen's Insurance Fund and Miller Coal Company. Affirmed.

Appeal from decision of Workmen's Compensation Board awarding claim. Before BALDRIGE, P. J.

Decision affirmed. State Workmen's Insurance Fund appealed.

*Error assigned* was, inter alia, judgment, quoting it.

*Samuel I. Spyker,* with him *George W. Woodruff,* Attorney General, for appellant, cited: McColligan v. R. R., 214 Pa. 229; Swartz v. Boro., 278 Pa. 134.

*B. F. Warfel,* for appellee, cited: Roach v. Lever Co., 274 Pa. 139; Callihan v. Montgomery, 272 Pa. 56; Stahl v. Coal Co., 268 Pa. 452; Rodman v. Smedley, 276 Pa. 296; Poluskiewicz v. Coal & Iron Co., 257 Pa. 305.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 10, 1926:

The owners of a coal mine entered into a business arrangement with David W. Gailey for the operation of their property; Gailey was killed, February 22, 1925, while in this employment, and his widow claimed compensation from the mine owners, designating them by name and also as the Miller Coal Company; an award was made in her favor from which the State Workmen's Insurance Fund appealed to the compensation board, and when that body affirmed the referee, an appeal was taken to the court of common pleas, which likewise affirmed; this appeal followed.

Before the referee and on all subsequent appeals, including the present one, the contention by claimant has been that her deceased husband was an employee of the Miller Coal Company, and, by the other side, that he was an independent contractor.

Section 104 of the Workmen's Compensation Act of June 2, 1915, P. L. 736, provides that the term "employee," as used in the statute, "is declared to be synonymous with servant and includes all natural persons who perform services for another for a valuable consideration," stating certain exclusions with which we are not now concerned; but it has been judicially decided that one performing services for another as an independent contractor is not an employee within the meaning of the act: Smith v. State Workmen's Ins. Fund, 262 Pa. 286; Simonton v. Morton, 275 Pa. 562, 567; Swartz v. Hanover Boro., 278 Pa. 134.

The tests for determining whether one is an independent contractor or a servant are fairly stated in the authorities cited by appellant (McColligan v. Penna. R. R. Co., 214 Pa. 229, 232; Smith v. State Workmen's Ins. Fund, supra, 290-91; Kelley v. Del., L. & W. R. R. Co., 270 Pa. 426, 429; Simonton v. Morton, supra, 567-68; Swartz v. Hanover Boro., supra, 137), and need not be repeated further than to say the general principle

is that, if, in rendering services for a compensation, one is obliged to follow the will of his employer only as to the result of the work in hand and not as to the means by which it is to be accomplished, he is generally accounted an independent contractor. When, according to these tests, the evidence shows one, claiming as employee of a defendant, to be an independent contractor, relief under the Compensation Act must be denied; but neither the compensation authorities nor the courts should be solicitous to put claimants in that position when a reasonable view of the evidence warrants a finding that the injured person was an employee.

Here, the evidence shows, among other things, the following material facts: An averment in the answer filed by defendant firm to the effect that "David W. Gailey was employed at the time of his death by E. F. Diamond and E. S. Dickey," the individual defendants; testimony by Diamond that the arrangement with Gailey was that, "besides getting out......coal," he was to "take care of the mine......in general......,—keep the water out, keep the pump going,"—for which he was to receive a fixed compensation at the rate of from $1.90 to $2 a ton on the output, and that, in paying Gailey on the tonnage basis, they "allowed him more than otherwise, to compensate him for that work," meaning the general care of the mine. Diamond said they told Gailey, from time to time, the amount of coal to mine, but the latter was free to hire whom he pleased to help him get it out. In conjunction with this, the witness stated that the reason for leaving Gailey free in hiring men to get out the coal was because "he knew more about mining coal than we did"; and this bit of testimony might be understood as tending to negative the idea, suggested by Gailey's freedom of action in hiring men, that the owners were interested only in the results of the operation of mining the coal. Diamond stated also that, though in recent years the mine owners had not taken "any men out to the mine and put them to work," yet

they had pursued this course "several years ago," while Gailey (or his father, who had occupied a similar position) was in charge of getting out the coal; and the witness said nothing to suggest that the mine owners had surrendered such right.  The product of the mine was generally sold from the main office, but Gailey at times disposed of coal at the mine itself, collecting the money and turning it in to the firm; and this latter service was considered part of his duties covered by the payment of so much per ton.  Diamond testified that Gailey's name did not appear on the bills sent to customers, but that his name did appear, as "foreman," on the bills "as they came in."  In answer to the question, "Did you consider Mr. Gailey an employee of yours?" this witness said, "Well, in a way an employee, yes"; then he added that, under the arrangement with Gailey, they could have discharged him at any time; and he admitted that his firm had taken out an insurance policy in which David W. Gailey and the other men in the mine, whom the latter hired, were included as employees of the firm. R. R. Jones, who appeared as a witness for the mine owners and stated that he was in their employ, took care of their books, collected their bills, and "paid the men" (meaning the men at the mine), said that the payment was made directly to Gailey at regular intervals, in a lump cash sum based on the amount of tonnage reported by him.  Gailey then paid the men, retaining the difference over their wages (about 86c a ton) as his net compensation.  Finally, Jones stated, it was not only part of his duty to see, for the owners of the mine, that "the miners were paid," but also to see that they "did their work in the right way"; so the record contains some evidence that the owners of the mine were interested in the manner in which the work in Gailey's charge was performed, as well as in the results achieved, and that they assumed control, through their representative Jones, to the extent indicated.

Taking the testimony as a whole, we cannot say that either the compensation authorities or the court below erred in concluding that deceased was an employee of the mine owners, rather than an independent contractor; and the mere fact that he was paid, instead of fixed wages, a certain price on each ton of coal taken from the mine, and that, out of this price, he paid others, did not necessarily deprive him of the position of an employee: Kelley v. D., L. & W. R. R., 270 Pa. 426, 430-1; Decatur Ry. & L. Co. v. Industrial Board, 276 Ill. 472, 114 N. E. 915, 916; Barclay v. Puget Sound Lumber Co., 48 Wash. 214, 93 Pac. 430; Messmer v. Bell, etc., Co., 133 Ky. 19, 117 S. W. 346, 348; Knicely v. West Va. M. R. Co., 64 W. Va. 278, 61 S. E. 811. The owners of the mine testified that they considered Gailey an employee; and their action in securing compensation insurance to cover him and the five other men in the mine was some evidence to be considered by the referee in concluding that deceased was a specially compensated foreman rather than an independent contractor.

Aside from whatever Gailey's relation might have been had the arrangement contemplated the performance by him of no other duty than that of getting out the coal, the fact must not be lost sight of that this unfortunate man came to his death not in mining, but through being accidentally overcome by the fumes of oil and gas while looking after the pump, which was there to keep the mine owners' property in condition, and in attending to which he performed services not directly connected with the actual getting out of the coal; nor could the referee, who found the facts, overlook the testimony, hereinbefore noted, to the effect that defendants, in fixing the compensation per ton for mining the coal, allowed Gailey more than they ordinarily would have paid, and that this was done in order to "compensate him" for attending to the pump and otherwise looking after the mine for them. The compensation authorities having found the facts in favor of claimant, the courts, in read-

ing the evidence, must resolve every intendment that way; and since, in the testimony to which we have just referred, the witness did not say that services of the character performed by Gailey at the time of the accident were such as had to be performed under the latter's alleged independent contract, but so phrased his testimony as to make it susceptible of the meaning that services of this kind were outside the contract, and for that reason the mine owners "allowed him more than otherwise to compensate him for that work," claimant is entitled to the benefit of any strength which this evidence may add to the decision in her favor.

True it is that some point may be made of the fact that certain of the testimony on which claimant depends was elicited by leading questions, but that affects only its probative weight in fact, as to which we have no power of review; it is for the compensation authorities to weigh the evidence, draw inferences therefrom, and find the facts: Vorbnoff v. Mesta Machine Co., 286 Pa. 199. Our sole concern is to see that competent proofs are present which support the material points of the claimant's case,—here, that Gailey was an employee as that status is defined in the compensation law and as it is distinguished by our decisions from the status of an independent contractor. As already shown, the record does contain evidence on these essential points, and be the proofs meager or plentiful, weak or strong, they are present and legally competent; hence the referee's findings that "decedent at time of his [accidental] death was acting as a mine foreman or superintendent of defendant's mine on a per ton basis," and that he was not acting as an independent contractor, will not be disturbed.

The judgment is affirmed.