Healey, Appellant, *v.* Carey, Baxter & Kennedy,
Inc. et al.
Healey *v.* Yesu et al., Appellants.

Argued March 3, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

*James G. McDonough,* for appellant, No. 25, and appellee No. 33.

*E. C. Marianelli,* for appellants, No. 33.

*S. H. Torchia,* with him *Ralph H. Behney* and *Claude T. Reno,* Attorney General, for appellee, No. 25.

OPINION BY HIRT, J., May 2, 1941:

Two separate proceedings were brought by claimant, one seeking to recover compensation from Carey Baxter & Kennedy, Inc., on whose mining operation the injury occurred, and the other against Yesu brothers, truckers, who were the immediate employers of claimant. Admitting that claimant lost the use of an eye in the course of his employment, each of these employers maintains that the other is liable for the payment of compensation. The referee and the board found the Carey company alone liable and made an award accordingly. The lower court on appeals, reversed in both cases and entered judgment against Yesu brothers for the full amount of compensation in the one case, and in favor of the Carey company in the other. But one petition should have been filed setting forth the facts; this done, both defendants could have been brought on the record and liability imposed on one or the other in a single proceeding. Cf. *Byrne v. Hitner's Sons Co.,* 290 Pa. 225, 138 A. 826.[1] We may consider the cases consolidated for the purposes of these appeals for both the compensation authorities and the court disposed of each claim in relation to the other as though both defendants had been brought in on one complaint.

---

[1] It is there pointed out that there is nothing in the Compensation Act inconsistent with such procedure. The act, primarily, is for the benefit of workmen and not for the protection of an employer in a controversy between him and another employer or insurance carrier. A proceeding on a single petition operates to the benefit of a claimant, protects the rights of all parties and avoids the possibility of inconsistent findings or conclusions on separate records. In practice all those named in a single complaint should be docketed by the department as parties defendant and as such must be served with all notices to which any defendant is entitled under the act.

The Carey company were engaged in mining coal by a stripping process near the city of Carbondale; the business of Yesu brothers was hauling and trucking. They entered into a verbal contract by which the latter supplied a truck and a driver to haul coal from the stripping operation to the breaker, for forty cents a ton, and to haul gob or refuse material to a disposal dump at two dollars an hour. A flying splinter from a chunk of coal which an employee of Carey company was breaking on the loaded truck struck claimant's right eye, ultimately destroying the sight. By the terms of the contract between the parties Yesu brothers specifically agreed to carry compensation insurance covering claimant during the performance of the contract.

Which of the two employers is responsible to claimant is to be determined from the nature of the relation between the contracting parties. If Yesu brothers were in fact independent contractors, they alone are liable. If claimant must be regarded as an employee of the Carey company, the compensation is payable by that company. The applicable principles of law construing contracts of this nature have been stated many times. The Workmen's Compensation Act, 77 PS 21, 22, declares the terms "employer" and "employee", as there used, to be synonymous with "master" and "servant." "The relation of master and servant exists where the employer has the right to select the employee, the power to remove and discharge him, and the right to direct both what work shall be done, and the way and manner in which it shall be done": *McColligan v. Penna. R. R. Co.*, 214 Pa. 229, 63 A. 792. On the other hand, where a contract is let for work to be done by another in which the contractee reserves no control over the means of its accomplishment, but merely as to the result, the employment is an independent one establishing the relation of contractee and contractor and not that of master and servant. *Smith v. State Workmen's Ins. Fund*, 262 Pa. 286, 105 A. 90; *Colleoni v. Delaware & Hudson Co.*, 274

Pa. 319, 118 A. 248; *Simonton v. Morton,* 275 Pa. 562, 119 A. 732. The distinguishing criterion is the right to control the means of accomplishing the result. "Where control is not reserved over the means, the relationship is that of independent contractor, and conversely where such control is reserved, the relationship is that of servant or employee": *Lenhart v. Emmons & Co.,* 99 Pa. Superior Ct. 180; *Beals v. State Workmen's Ins. Fd. et al.,* 131 Pa. Superior Ct. 418, 200 A. 178; *Gailey v. S. Workmen's Ins. Fund et al.,* 286 Pa. 311, 133 A. 498.

Applying the above and similar tests laid down in Restatement Agency, §220 it is clear that Yesu brothers were independent contractors and that claimant was their servant. The business of hauling was not part of the business of the Carey company but it was the regular business of Yesu brothers. The latter supplied the truck and the driver, the instrumentalities for doing the work. *Thatcher v. Pierce,* 281 Pa. 16, 125 A. 302; *Funston v. Ingenito,* 282 Pa. 124, 127 A. 470; *Matlack v. Chalfant,* 69 Pa. Superior Ct. 49. The Yesu partnership hired, paid and alone could discharge claimant and under their agreement could have supplied or substituted from time to time any truck or any of their drivers. "The fact that the contractor employs, pays, and has full power to control the workmen is practically decisive of his independence: 14 R. C. L. 71": *Simonton v. Morton,* supra. Yesu brothers maintained control of the means of doing the work and at the outset gave claimant general instructions as to the method and manner of performance. They could remove him from hauling at the mine and on one occasion did assign him to other work. By agreement they carried compensation insurance on their drivers, including claimant; evidence of their independent relationship, though not conclusive of the question, *(Knisely v. Knisely,* 120 Pa. Superior Ct. 140, 146, 182 A. 51) but sufficient to discharge the Carey company from liability as "statutory employer." *Byrne v. Hitner's Son's Co.,* supra. The superintendent

of Carey company directed the work of hauling but only to this extent: he determined the working hours, indicated what was to be hauled, whether coal or gob, and when coal 'was to be loaded directed where the truck was to be placed for that purpose. He had no authority to discharge claimant but could exclude him and the truck from the operation when there was no hauling to be done, or in terminating the contract. The company was without power to direct claimant to do any work other than to drive the Yesu truck and exercised no control over the manner of claimant's driving after leaving the mining operation.

The fact that there was a close relation between mining the coal and hauling it away does not affect claimant's status as a servant of Yesu. There was a complete separation of these classes of work by the terms of the contract though manifestly it was the intention of the parties that they should be performed in harmony. The two phases of the work united in a single result, to wit: the delivery of the coal to the breaker as mined. Where such situation is presented, the contractee must of necessity have the right to indicate when and where the contractor's work shall be done, without assuming the responsibility of making the contractor or his employees, servants of the contractee. Whatever supervision of the contractor was required to co-ordinate two phases of work necessary to the accomplishment of a definite result was not such control over the manner of performance as to raise the relation of master and servant by implication, for co-operation in this respect was within the contemplation of the parties as necessary to the performance of the contract. Where coal has been mined and stored before the making of a contract, what is to be hauled can be identified in the agreement and no further directions are necessary. But where it is to be hauled as mined in a stripping process some control over the drivers of the trucks is necessary so that the trucks may be loaded

without interfering with the mining operation. In *Simonton v. Morton,* supra, a sign painter was held to be an independent contractor though the contractee by the agreement designated the design and the color of the advertisements and required their submission to him for approval. The contractee also "had the right to direct *where* the work was to be done, and, *when* a change of design was to be painted, it should be only when directed by him, and when signboards were to be removed to new locations their relocation was to be only on his order." In commenting on the contention that these provisions gave the contractee such control over the work as to make the painter his servant, it was said: "it is apparent however that these provisions are for the purpose of guaranteeing ultimate performance in accordance with the agreement, not to fix control over the means and manner of execution. There necessarily must be a certain control by the contractee of all undertakings such as the one we are considering, otherwise he could not safeguard himself as to the satisfactory accomplishment of the work. 'As a practical proposition, every contract for work to be done reserves to the employer a certain degree of control—at least to enable him to see that the contract is performed according to the specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for the relation of master and servant is not inferable from the reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative so long as he does it in accordance with the contract. The control of the work reserved in the employer which makes the employee a mere servant is a control, not only of the result of the work, but also of the means and manner of the performance thereof': 14 Ruling Case Law 68." In *Colleoni v. Delaware & Hudson Co.,* supra, the contractor was held to be independent though he expressly agreed to perform the work "according to the directions

of the mine foreman" in attaining the contemplated result. "The direction to one engaged in 'general hauling' to haul property to or from a specified place does not change the nature of, or convert a special employment into the general relation of master and servant": *Wright v. Wilson Company,* 83 Pa. Superior Ct. 487.

Treating the conclusions of the compensation authorities as verdicts of a jury and giving the successful party in each case the benefit of a liberal construction of the testimony and the benefit of all favorable inferences *(Ford .v. Dick Co.,* 288 Pa. 140, 135 A. 903) we are convinced that the lower court correctly determined, as a matter of law, that Yesu brothers alone were liable. Where there is agreement as to the facts—and there is no dispute here—it is for the court to say whether the claim is compensable and if so, by whom. *Sgattone v. Mulholland & Gotwals Inc. et al.,* 290 Pa. 341, 138 A. 855.

The judgment in each case is affirmed.